**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOHN HELTON, JR.,                                    Case No. 1:13-cv-427
     Plaintiff,                                     Spiegel, J.
                                                     Litkovitz, M.J.

     vs.

COMMISSIONER OF                                      **REPORT AND**
SOCIAL SECURITY,                                     **RECOMMENDATION**
     Defendant.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply

memorandum (Doc. 16).

**I. Procedural Background**

Plaintiff filed an application for DIB on March 5, 2010, alleging disability since January

15, 2009, due to a herniated disk, a bad back and high blood pressure. (Tr. 145). Plaintiff's

application for DIB was denied initially and upon reconsideration. Plaintiff, through counsel,

requested and was granted a de novo hearing before administrative law judge (ALJ) Peter J.

Boylan. Plaintiff appeared and testified at the ALJ hearing. A vocational expert (VE) also

appeared at the hearing but did not provide testimony. On November 9, 2011, the ALJ issued a

decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## I. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.,* an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

2

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir.

1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff met] the disability insured status requirements of the Social
> Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 15,
> 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative changes in
> the low back, arthritis of the hips, hypertension, and obesity (20 CFR
> 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that
> meets or medically equals the severity of one of the listed impairments in 20 CFR
> Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the
> [plaintiff] has the residual functional capacity to perform the full range of medium
> work.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The [plaintiff] was born [in] . . . 1956 and was 52 years old, which is defined as
> an individual closely approaching advanced age, on the alleged disability onset
> date.  The [plaintiff] subsequently changed age category to advanced age (20 CFR
> 404.1563).
>
> 8. The [plaintiff] has a limited education and is able to communicate in English
> (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability
> because applying the Medical-Vocational Rules directly supports a finding of "not
> disabled," whether or not [the plaintiff] has transferable job skills (See SSR 82-41
> and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 15, 2009, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 20-24).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a two-fold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives

4

the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not

giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized by the

ALJ in his decision (Tr. 22) and will not be repeated here. Where applicable, the Court will

identify the medical evidence relevant to its decision.

On appeal, plaintiff assigns nine errors: (1) the ALJ improperly assessed plaintiff's

credibility by failing to consider plaintiff's "good work history"; (2) the ALJ erred by failing to

fully develop the case record; specifically, the ALJ denied plaintiff's request to either subpoena

medical records or leave the record open for 30 days following the hearing to allow plaintiff's

counsel an opportunity to obtain and submit the records; (3) the ALJ failed to address treatment

records from the Pain Center of Broward and a chronic pain RFC completed by Dr. Leonard

Haimes, M.D., which constitute new and material evidence in this case; (4) the ALJ erred by

failing to find that plaintiff met Medical-Vocational Guidelines ("the Grid") Rule 202.02 based

on Dr. Haimes' RFC assessment; (5) the ALJ erred by failing to address Dr. Haimes' opinion,

which constitutes new and material evidence, and to apply the treating physician rule to the

opinion; (6) the ALJ erred by failing to consider the evidence as a whole and by citing only the

evidence that supported a finding of disability; specifically, the ALJ failed to consider the

opinion of the treating physician, Dr. Haimes, without articulating a reasoned basis for declining

to give the opinion controlling weight; (7) the ALJ erroneously failed to denote plaintiff's

chronic pain as a "severe" impairment, despite plaintiff's testimony of disabling pain; (8) the

ALJ erred at step five of the sequential evaluation process by finding that plaintiff could do a full range of medium work but that he could not perform his past job as a truck driver, and the ALJ further erred by failing to obtain VE testimony to identify the types and number of jobs plaintiff could perform; and (9) the ALJ erred by failing to obtain VE testimony concerning whether there would be a significant number of jobs in the economy plaintiff could perform if Dr. Haimes' opinion that plaintiff would miss two days of work per month were credited.

In response, the Commissioner contends that the ALJ did not err when he elected to close the record at the ALJ hearing and to decline plaintiff's request to subpoena records. The Commissioner asserts that plaintiff is now before the Court seeking what is, in essence, a remand of this case for further consideration of new and material evidence pursuant to Sentence Six of 42 U.S.C. § 405(g). The Commissioner argues that plaintiff's request should be denied because the criteria for a Sentence Six remand are not met. The Commissioner further argues that plaintiff's fourth, fifth, sixth and ninth assignments of error should be denied as moot because they are premised on the opinion of the treating physician, Dr. Haimes, which was not before the ALJ and therefore is not part of the record which the Court may consider on its review of the ALJ's decision.

In the discussion that follows, the Court has re-designated certain assignments of error to accurately reflect the nature of the error alleged, combined those assignments of error which are duplicative or related to each other, and reordered the assignments of error.

6

**1.  The ALJ did not err by denying plaintiff's request for a subpoena and closing the record.**

Plaintiff's second assignment of error alleges that the ALJ erred by failing to fully develop the case record.  In support of this assignment of error, plaintiff's counsel cites a number of cases and Social Security regulations pertaining to various aspects of the ALJ's duty to develop the record, including the need to obtain consultative examinations and re-contact treating sources.  (Doc. 10 at 6-8).  However, it is apparent from the substantive allegations offered in support of this assignment of error that plaintiff challenges the ALJ's refusal to issue a subpoena for medical records or, in the alternative, to hold the record open for 30 days following the ALJ hearing to allow plaintiff an opportunity to obtain and submit medical records to be included in the record.  The Court will therefore limit its analysis of the second assignment of error to these specific matters.

The Commissioner argues that the ALJ did not err when he denied plaintiff's request to issue a subpoena and elected to close the record.  (Doc. 15 at 2-4).  First, the Commissioner contends that the ALJ was not obligated to grant plaintiff's request for a subpoena to obtain records following the hearing because the request did not comply with the Social Security Administration's procedural requirements.  (*Id.* at 3, citing 20 C.F.R. § 404.950(d)(2)).  Second, the Commissioner argues that while the ALJ has a duty to develop the record, the ALJ has the discretion to determine whether further evidence is needed, and the ALJ reasonably determined that additional evidence was not required in this case.  Finally, the Commissioner argues that even if the ALJ erred by failing to leave the record open, any such error was harmless.

A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  The burden is on the claimant to furnish

7

medical and other evidence about his impairments and the effects of his impairments on his

ability to work. *Id*. "Only under special circumstances, *i.e.*, when a claimant is without counsel,

is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an

ALJ have a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*,

58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan v. Sec'y of Health & Human Servs.,* 801

F.2d 847, 856 (6th Cir. 1986); *Lashley v. Sec'y of Health and Human Servs.,* 708 F.2d 1048,

1051-52 (6th Cir. 1983)). *See also Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th

Cir. 2008) ("Absent such special circumstances - which do not exist in this case - this court

repeatedly affirms that the claimant bears the ultimate burden of proving disability.").

The Social Security regulations state that "[w]hen it is reasonably necessary for the full

presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party

. . . issue subpoenas . . . for the production of . . . records . . . or other documents that are material

to an issue at the hearing." 20 C.F.R. § 404.950(d)(1). Section 404.950(d) imposes the

following requirements on a party desiring a subpoena:

> Parties to a hearing who wish to subpoena documents or witnesses must file a
> written request for the issuance of a subpoena with the administrative law judge
> or at one of our offices at least 5 days before the hearing date. The written request
> must give the names of the witnesses or documents to be produced; describe the
> address or location of the witnesses or documents with sufficient detail to find
> them; state the important facts that the witness or document is expected to prove;
> and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 404.950(d)(2). *See also* Social Security Administration Hearing, Appeals and

Litigation Law Manual (HALLEX) 1-2-5-78.B[1] (claimant must make written request explaining

what the evidence is expected to prove and showing that facts cannot be proven without a

---

[1] The HALLEX is a procedural manual utilized by the Commissioner "that sets forth safeguards and procedures for these administrative proceedings." *Robinson v. Barnhart*, 124 F. App'x 405, 410 (6th Cir. 2005). The HALLEX provision in question is available at http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-78.html.

subpoena). Thus, a claimant seeking a subpoena must file a written request indicating why a subpoena is necessary and the important facts the subpoenaed documents are expected to prove. *Calvin v. Chater*, 73 F.3d 87, 90 (6th Cir. 1986). It is reasonable to require a party who requests a subpoena to comply with the requirements of § 404.950(d)(2), and a claimant is not entitled to issuance of a subpoena if he disregards those requirements. *Id*. at 92-93.

The record here shows that plaintiff was at the ALJ hearing held in Cincinnati, Ohio, on October 27, 2011, with counsel who is representing him in connection with this appeal. (Tr. 31). At the beginning of the hearing, counsel stated that she would be requesting a continuance and assistance getting records from the Pain Center of Broward County ("Pain Center") in Fort Lauderdale, Florida, "because we've been unsuccessful in doing so, and we'd like them subpoenaed." (Tr. 32). Counsel informed the ALJ that plaintiff had been obtaining treatment at the Pain Center starting in 2008 and continuing until the date of the hearing. (Tr. 33). The ALJ reserved ruling on the issue until the close of the hearing.

Plaintiff testified at the hearing that he hurt his back in approximately April of 2008 while on vacation in Florida, and he subsequently went to see a doctor in Florida because it was less expensive to get an MRI there. (Tr. 35-36). Plaintiff testified that since 2008, he has been travelling by car to Florida once a month for treatment at the Pain Center. (Tr. 36-37, 39-40). Plaintiff testified that his son or daughter drives him to Florida, they stay overnight, and they return the next day. (Tr. 36-37). Plaintiff testified that he received "Oxycodone 30's," "Oxycodone 15's," and Xanax at the Pain Center, and he was given exercises to do. (Tr. 40). He testified that he had been taking these medications since 2008. (Tr. 41). Plaintiff testified that he did not have a regular physician apart from the Pain Center, and he testified that he had not received any treatment for his condition other than the medications. (Tr. 39-40, 42).

At the conclusion of the hearing, the ALJ stated that he was closing the record. (Tr. 49). The ALJ acknowledged that there were outstanding records from the Pain Center in Broward County as counsel had advised him, and the ALJ stated that he would review any records that were submitted before a decision was issued in the case. (Tr. 49-50). Counsel asked if the ALJ would subpoena the records from the Pain Center "since we're not able to supply" those or, in the alternative, leave the record open for 30 days so that counsel could obtain the records, but the ALJ declined the request stating that the case had been pending for some time and at some point a decision had to be made. (Tr. 50).

The ALJ subsequently issued his decision on November 9, 2011. (Tr. 18-25). Plaintiff's counsel mailed the following additional records to the ALJ six days later on November 15, 2011: (1) treatment records from the Pain Center dated May 18, 2011 to October 10, 2011 (Tr. 208-256); (2) a chronic pain RFC questionnaire dated October 31, 2011, which was completed by Dr. Haimes, a physician at the Pain Center (Tr. 257-261); and (3) cervical spine MRI results dated October 31, 2011 (Tr. 262-63).

The Court finds that the ALJ's decision to deny plaintiff's subpoena request was not unreasonable. The ALJ was not obligated to issue a subpoena because the request did not comply with the Social Security regulations. The request was not in writing and it was not made in advance of the hearing. Further, even if plaintiff had submitted a timely written request for a subpoena, there is no indication in the record as to why a subpoena was needed to obtain the records in question. Plaintiff's counsel offered no explanation at the hearing for why she required a subpoena but only vaguely asserted that she and plaintiff had been "unsuccessful" in obtaining the records and that the records were "really relevant." (Tr. 32). Nor has plaintiff's counsel offered a valid explanation in this proceeding as to why a subpoena was required to

10

obtain the records, which counsel was able to obtain without a subpoena less than three weeks after the hearing. The only allegations pertaining to the ALJ's failure to issue a subpoena included in the Statement of Errors are ambiguous and indicate simply that counsel sent the records to the ALJ before she received the ALJ's decision. Counsel states:

> Counsel for Plaintiff did receive the West Palm Beach aka Pain center of Broward County pain management records from 5/18/11 and they were provided to the court before the Decision was received by counsel. The decision indicated these records were not received.

(Doc. 10 at 7). These allegations fall far short of showing that a subpoena was necessary to obtain the records in question. For this reason, and because plaintiff failed to comply with the applicable procedural requirements for a valid subpoena request, the ALJ did not act unreasonably by denying plaintiff's request for a subpoena.

The Court further finds that the ALJ did not violate his duty to fully and fairly develop the record by declining to keep the record open for 30 days to allow plaintiff to obtain and submit additional records.[2] It was plaintiff's burden to furnish evidence in support of his claim, and no special circumstances were present here which imposed on the ALJ "a special, heightened duty to develop the record." *See Trandafir*, 58 F. App'x at 115. Plaintiff was represented by counsel during the administrative proceedings, and there is no proffered explanation as to why counsel was unable to obtain the additional medical records, some of which dated back to May 2011, prior to either the hearing or issuance of the ALJ's decision.[3]

---

[2] Although plaintiff's counsel did not raise this specific issue, the ALJ failed to comply with HALLEX I-2-7-20.A, which states: "When a claimant or representative requests time to submit evidence . . . after the hearing, the ALJ must set a time limit for the posthearing actions to be completed and inform them that if the material is not received within the time limit, absent a showing of good cause to extend the time, the ALJ will issue a decision without the material. . . ." However, the Court notes that any procedural violation of this HALLEX provision by the ALJ was harmless error for the reasons discussed below in connection with plaintiff's third assignment of error.

[3] Insofar as plaintiff alleges the additional records were new and material and should have been considered by the ALJ, the Court will consider plaintiff's allegation in connection with his other assignments of error alleging that a Sentence Six remand is warranted.

Plaintiff's second assignment of error should be overruled.

**2. The ALJ did not err by failing to consider evidence submitted following his decision.**

Plaintiff's fifth, sixth and ninth assignments of error are premised on the ALJ's failure to consider or give proper weight to the opinion of plaintiff's treating physician, Dr. Haimes, and treatment records which plaintiff's counsel mailed to the ALJ on November 15, 2011, six days after the ALJ issued his decision. (Tr. 208, 257). This Court's substantial-evidence review of the ALJ's decision cannot consider new evidence submitted after that decision is rendered. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Instead, as explained more fully below, the Court reviews newly-submitted evidence only to determine whether it meets the requirements for a Sentence Six remand. *Id.* Accordingly, because Dr. Haimes' assessment and the treatment records in question were not before the ALJ when he issued his decision, the ALJ did not err by failing to consider this evidence. Plaintiff's fifth, sixth and ninth assignments of error should be overruled.

**3. A Sentence Six remand is not warranted.**

Plaintiff contends as his third assignment of error that the ALJ failed to consider new and material evidence which he submitted post-hearing consisting of: (1) treatment records from the Pain Center dated May 8, 2011 to October 10, 2011 (Tr. 208-256); (2) a chronic pain RFC questionnaire dated October 31, 2011, which was completed by Dr. Haimes, a physician at the Pain Center (Tr. 257-261); and (3) cervical spine MRI results dated October 31, 2011 (Tr. 262-63).

Sentence Six of 42 U.S.C. § 405(g) enables a district court to remand a disability case for further administrative proceedings in light of evidence presented after the ALJ's decision. To

obtain a Sentence Six remand, a claimant has the burden to establish that there is (1) new evidence; (2) the evidence is material; and (3) there is good cause for the failure to submit it to the ALJ. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). Evidence is new for purposes of § 405(g) only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster,* 279 F.3d at 357 (citing *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)). Post-hearing evidence is material "only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with [it]." *Foster*, 279 F.3d at 357 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). A claimant demonstrates "good cause" by showing a reasonable justification for failing to "acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* (citing *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984). The plaintiff bears the burden of showing that a remand is appropriate. *Id.* (citing *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986)).

Plaintiff has failed to establish the necessary requirements for a Sentence Six remand. First, none of the evidence submitted by plaintiff is new for purposes of § 405(g) because all of the evidence was in existence before the ALJ issued his decision on November 9, 2011. In fact, the Pain Center treatment notes pre-date both the October 27, 2011 ALJ hearing and the ALJ's decision.

Second, plaintiff has failed to carry his burden to show that the evidence is material. Plaintiff contends that Dr. Haimes' assessment is material because Dr. Haimes diagnosed him with chronic pain "severe enough to interfere constantly with attention and concentration"; his assessment provides support for plaintiff's symptoms and functional limitations; he opined that plaintiff's impairments have lasted or are expected to last at least 12 months; and Dr. Haimes'

13

opinion would have been entitled to "controlling and/or deferential weight" in accordance with the treating physician rule had it been before the ALJ for his review. (Doc. 10 at 9, citing Tr. 257-61; Doc. 16 at 4-5). Plaintiff alleges that the Pain Center records are material because they establish that he is on "very strong medication for pain," *i.e.*, Oxycodone 30 mg # 140 every 4-6 hours; Oxycodone 15 mg # 84 every 6-8 hours; and Ibuprofen 800 mg every 6-8 hours. (Doc. 10 at 9, citing Tr. 209, 213). Plaintiff contends that the MRI is material because it shows nerve root impingement, which would substantiate the need for pain medication and management. (Doc. 16 at 4, citing Tr. 262-63). Plaintiff alleges that this evidence, taken together, likely would have resulted in a finding of disability. The Court disagrees.

As discussed more fully in connection with the first and seventh assignments of error, the ALJ reasonably discounted plaintiff's complaints of disabling pain as not credible based on the evidence in the record, including the medical opinions of record. (Tr. 23). The ALJ gave "significant weight" to the opinions of the state agency reviewing physicians that plaintiff was "only partially credible regarding his report of symptoms." (Tr. 22-23). The ALJ also gave "some weight" to the assessment of the consultative examiner, Dr. Jennifer Wischer Bailey, M.D., who reported that plaintiff's examination "was unremarkable" (Tr. 202). (*Id.*). Nothing in either Dr. Haimes' assessment or the Pain Center treatment notes appears likely to have changed the ALJ's analysis of the medical opinions in the record and plaintiff's complaints of disabling pain. Both Dr. Haimes' assessment and the Pain Center treatment records appear to be based largely on plaintiff's subjective complaints of pain. Dr. Haimes diagnosed plaintiff with chronic lower back pain but listed no test results or clinical findings in support of his assessment. (Tr. 258-61). Moreover, rather than supporting plaintiff's complaints of debilitating back pain, the Pain Center treatment records indicate that plaintiff's back pain was reasonably well-controlled

14

by his medications. (*See* Tr. 217: 5/18/11- pain level 2.5/10 on medication; Tr. 213, 6/16/11-

pain level 2/10 on medications; Tr. 211: 8/11/11- pain level 2/10 on and off medications; Tr.

209: 10/10/11- "sleeping okay" and feeling better since starting the medications but complaints

of increased pain after picking up heavy box of Halloween decorations three days earlier).

Finally, the October 31, 2011 MRI results, which are related to the cervical spine, do not

corroborate plaintiff's complaints of debilitating back pain.[4] (Tr. 262). Thus, plaintiff has not

shown there is a reasonable probability the ALJ would have reached a different conclusion had

Dr. Haimes' chronic pain assessment, the Pain Center treatment notes, and the October cervical

spine MRI results been before him.

Even assuming the evidence plaintiff seeks to add to the record is material, plaintiff has

not shown good cause for failing to submit the evidence prior to either the ALJ hearing or

issuance of the ALJ's decision. Plaintiff alleges there is "good cause" for failing to submit the

evidence before the ALJ hearing because plaintiff's counsel requested all records from Dr.

Haines and the Pain Center prior to the hearing, plaintiff subsequently requested only a 30-day

extension of time at the hearing to receive the records, and the records were filed within 19 days

of the hearing. (Doc. 16 at 5). However, plaintiff does not provide any specific information

pertaining to the records request, such as when the request was made, the form of the request,

and the reason for the delay. In the absence of any information indicating that plaintiff initially

requested these records in a timely manner, the Court is unable to determine that plaintiff had

good cause for the failure to submit the records prior to either the ALJ hearing or issuance of the

ALJ's decision.

---

[4] The treatment notes make no mention of neck or shoulder complaints until October 10, 2011, when plaintiff complained of right shoulder pain after lifting a heavy box. (Tr. 209).

15

For these reasons, plaintiff has failed to carry his burden to show that a Sentence Six remand is warranted. Plaintiff's third assignment of error should be overruled.

**5. The ALJ did not err in assessing plaintiff's credibility.**

Plaintiff alleges as his first and seventh assignments of error that the ALJ improperly assessed his credibility by failing to consider his "good work record" (Doc. 10 at 5) and by failing to denote his chronic pain as a severe impairment which could be the sole basis for his disability.

Title 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p describe a two-part process for assessing the credibility of an individual's statements about his symptoms. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, the ALJ's credibility is entitled to deference. The ALJ made valid findings regarding plaintiff's credibility in connection with his determination that plaintiff retained the RFC to perform the full range of medium work, and those findings are supported by the substantial evidence of record. (Tr. 22-23).

The ALJ reasonably determined that the medical evidence was not consistent with plaintiff's complaints of disabling pain. (Tr. 23). Consultative examiner Dr. Bailey found that plaintiff's physical examination was "unremarkable" and the only abnormal findings on examination were tenderness on palpation of the hips and only "slight difficulty forward bending." (Tr. 202). Dr. Bailey did not report any clinical findings consistent with plaintiff's complaints of disabling pain. (Tr. 196-202).

Moreover, the ALJ reasonably discounted plaintiff's credibility based on numerous inconsistencies in plaintiff's reports of the treatment he had received and the medications he had been taking on a long-term basis for his back pain, including Oxycodone and Xanax. (Tr. 23).

In the disability report dated March 24, 2010, the only medication plaintiff reported receiving was Percocet prescribed by Bethesda North Hospital. (Tr. 148). In addition, plaintiff reported to Dr. Bailey at the consultative examination in June 2010 that he was not seeing a physician at that time and he took no medication for his pain. (Tr. 200). However, plaintiff reported to the SSA in August 2010 that he was being treated by Dr. Pace in West Palm Beach, Florida, who at that time was prescribing plaintiff Oxycodone and Xanax for plaintiff's chronic back pain. (Tr. 169-70). An earlier March 25, 2010 MRI report lists Dr. Angelo Pace as the referring physician. (Tr. 206-07). Plaintiff testified at the hearing that he had been treated at the Pain Center in Florida once a month and had been taking Oxycodone and Xanax since 2008. (Tr. 36-37, 39-41). Thus, plaintiff's representations to the SSA and Dr. Bailey that he was not seeing a physician and he was taking no medications, or only Percocet, for his pain conflicted with other evidence in the record and with plaintiff's testimony showing that plaintiff had been travelling to a pain clinic in Florida once a month since 2008 where he was prescribed Oxycodone and Xanax. The ALJ reasonably discounted plaintiff's credibility on this basis.

Further, the ALJ reasonably determined that plaintiff's complaints of disabling back pain were not entirely credible based on the reports of activities made by plaintiff and his wife. Although plaintiff reported in September 2010 that he could not sit very long without changing positions and was unable to do any household chores due to back pain (Tr. 181), the record shows that he reported in September 2010 that he had just returned from a two-month stay in Florida after having driven there with his uncle. (Tr. 173). Further, although plaintiff testified at the ALJ hearing that he had not been fishing since the alleged onset date of January 15, 2009 (Tr. 45), plaintiff's wife reported over the phone on April 22, 2010, that plaintiff was out fishing and would not be returning until the following day. (Tr. 163). The ALJ was entitled to discount

18

plaintiff's credibility based on the inconsistencies between reports of his subjective limitations

and his other activities. *See Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990) (the ALJ

may consider the plaintiff's household and social activities in evaluating the plaintiff's

credibility).

Thus, the ALJ's reasons for discounting plaintiff's complaints of allegedly disabling back

pain and symptoms are valid and find substantial support in the record. The ALJ's credibility

determination is therefore entitled to deference. The ALJ was not bound to credit plaintiff's

complaints of pain based on his "good work history." (Doc. 10 at 5). Plaintiff's first and

seventh assignments of error should be overruled.

**6. The ALJ did not err at Steps Four and Five of the Sequential Evaluation.**

Plaintiff alleges as his fourth and eighth assignments of error that the ALJ committed a

number of errors at Steps Four and Five of the Sequential Evaluation process. Specifically,

plaintiff alleges that the ALJ erred by: (1) finding plaintiff could perform medium level work but

was unable to perform his past relevant job as a truck driver moving drywall, which plaintiff

alleges is a medium level job with SVP 3 according to the Dictionary of Occupational Titles

(DOT) 906.683-022; (2) failing to find he was disabled under the Grid; and (3) finding plaintiff

could perform a significant number of jobs without eliciting the testimony of a VE. (Doc. 10 at

9, 14). Plaintiff alleges that the ALJ should have found him disabled under Grid Rule 202.02 for

light work because he was of advanced age at the time of the hearing (55 years old), he has an

eighth grade education, and he has past relevant work as a truck driver, which is a medium level

job. (*Id*. at 9, citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). In response, the Commissioner argues

that the record was sufficiently developed to enable the ALJ to determine that plaintiff could

perform a full range of medium work, and the ALJ did not err by relying on the Medical-

19

Vocational Guidelines to find plaintiff was not disabled without eliciting testimony from the VE at the hearing. (Doc. 15 at 10).

The VE, who was present but did not testify at the ALJ hearing, completed a form prior to the hearing classifying the exertion level of plaintiff's prior relevant work as a truck driver as "heavy to very heavy." (Tr. 187). The VE reported on the form that although the truck driving job was classified as a medium level job in the DOT, plaintiff's job was performed at the heavy to very heavy exertion level because his job required loading drywall onto trucks and delivering the drywall to job sites. (*Id.*). Plaintiff confirmed this description of his prior work provided by the VE as accurate at the ALJ hearing. (Tr. 38). Accordingly, there is no inconsistency between the ALJ's finding that plaintiff could not perform his past relevant work and the ALJ's finding that plaintiff could perform a full range of medium level work.

Because only exertional limitations were at issue in this case and the ALJ determined that plaintiff could perform a full range of medium work, the ALJ could rely directly on the Grid to ascertain whether plaintiff was disabled; the ALJ was not required to elicit any vocational testimony under these circumstances. *See* 20 C.F.R. § 404.1569a(b) ("When your impairment(s) and related symptoms only impose exertional limitations and your specific vocational profile is listed in a rule contained in appendix 2 of this subpart, we will directly apply that rule to decide whether you are disabled."). Accordingly, the ALJ did not err by applying Grid Rules 203.12 (transferable skills) and 203.19 (skills not transferable) for medium work to find plaintiff was not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 2. Plaintiff's fourth and eighth assignments of error should be overruled.

20

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _7/10/14_

Karen L. Litkovitz
United States Magistrate Judge

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JOHN HELTON, JR.,                   Case No. 1:13-cv-427
      Plaintiff,                       Spiegel, J.
                                    Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).